In my part, please call the court's base. 3-090410, Pamela Watson and Daryl Watson, Appellant William Lazarus v. Daniel Lesnick, and Imperial Construction, Jennifer Moriarty. Mr. Lazarus, you may proceed. Good morning, Your Honors. It is William Lazarus on behalf of the May it please the court. Pamela Watson was driving early in the morning, sometime just before 5.30 a.m. on August 28, 2006, on Route 59 in Plainfield, and Defendant Daniel Mesich was driving his Chevy Tahoe SUV. It went across the yellow line, smashed into Pam's vehicle, and caused her severe injuries. This lawsuit resulted. The issue before the court is whether Daniel Mesich was within his scope of employment as he was driving that morning. The trial judge found that, as a matter of law, he was not, and granted summary judgment to his employer, Imperial Construction Associates, that we believe that decision was in error. And the reason it was in error, primarily, was because Daniel Mesich was required, as an ironworker, to haul his tools of his trade, used on the construction job at McCormick Place that morning, to the work site. And also, at Imperial's wish, he would be assigned on a daily basis to a different construction site. It wasn't a situation where he was an employee going to a regular workplace. The decision by the Illinois Supreme Court in the Pine v. Whitmer case set the rule. And the trial judge followed the standard rule that normally, when you're an employee, you're traveling to your regular work site, that trip from home to the work site, from the work site to home, is not within the scope of employment. But the Pine case, the high court made clear that that rule has exceptions. And the key thing is that if the trip is for some purpose of the employer, other than just getting the employee to work, that's his purpose, some purpose of the employer, then it's an exception, and the trip is within the scope of employment. What was the purpose, other than getting him to work? The purpose was that, to bring the tools to the work site. And also, there's a purpose of being, it was Imperial's wish that he go to a different work site each day. It wasn't a situation, as discussed in the Leszczynski case, where the worker's going to the same spot each time, and he chooses where to live, and she chooses where to work. Here, the employer was saying, in fact, it was sort of humorous in the deposition testimony, the message said, well, I don't know how they choose where I go. I think somebody's throwing darts at the board. So, but as to the tools... I have a question about ironworking. Is there any evidence in the record as to the custom and practice of an ironworker that he or she carries a complement of tools to their trade, regardless of who their employer is? Or is this unique to only this employer? Daniel Messick spoke of, in his deposition, I think it's page C131, A6 of our appendix, as an ironworker, I have to go buy my own tools and be present with them on the job. And then he says that Imperial, he had to be a union ironworker to work for Imperial. You would agree that it would be a much stronger case for you if that wasn't a general custom and practice of ironworkers, but that it was a requirement of the employer. Oh, I wouldn't agree with that. I think that, in fact, it's... The key is that Imperial had a contract at McCormick Place with the subcontractor. It says they're going to do putting up the steel and welding and bolting, and that it shall supply not only the labor and the supervision of the labor, but Imperial was required to provide the tools and equipment for the job. So that's... Imperial had a purpose, and it had a purpose to hire ironworkers who would bring their own tools and equipment to do the work, and that is really... Imperial also had a contract to provide the labor, so does every laborer who leaves his house automatically on the job? No. Well, it seems to me there's no distinction between labor and tools at that point. What is unique about this employment relationship? That's why I say I think your case would be stronger if you had a requirement by that particular employer that was apart from a custom and practice of all labor and ironworkers to furnish their own tools. I see your point, Judge, but I still think that the general exception is that if there's some purpose, some purpose, not complete purpose, that the employer has, or that the employee is fulfilling some purpose  then it's within the scope of employment. And here you have the purpose set by contract between the Imperial and the subcontractor at McCormick Place, and Daniel Message was fulfilling that purpose. And it had to... And there's no requirement by the union that the ironworker has to work at a different place chosen by Imperial on a daily basis based on Imperial's needs. We need somebody here, we need somebody here, and it told Message that he had to travel to those different spots. Again, it's within a purpose of the employer, so the exception applies. Let me ask you this. If, let's suppose everything's the same, same employer, same got to bring tools, everything's the same with one exception, and that is the employer says, you show up at our shop at Imperial every morning and then you'll get your assignment, okay? In other words, you don't know, when you go to bed the night before, you don't know where you're going to be. Come to our shop and we'll tell you. So he's on the way to Imperial's shop carrying those tools that they require him to carry in the scope of his employment. If you give weight, strong weight, to the concept of, oh, he's a union worker, so it's really just hiring a laborer, and this is part and part of the package, and so there was no employer purpose served, I still personally disagree with that. Not just personally. I think that interpretation wouldn't be right. But if you approached it from that, you'd say, yes, if he had to go to Imperial for his general spot, Imperial sent him out, and you say you drop out the tool factor entirely because of the union relationship, then there would be a difference. But that, of course, wasn't the case. The case was that Imperial said, you know, put a dart at the board, how are they did, here, here, here. So the employee was always traveling at the purpose of Imperial. I'm trying to understand the general principle here you're espousing. The general principle here is that that's a specific purpose that you have targeted that makes a difference in your mind as far as the legal principle within the scope of employment is that the employee had to have his tools, right? He had to bring his own tools. He had to bring his own tools to the particular work site. Yes. So would it be true, if that's the general principle, bring your own tools to the work site as a requirement, where the employee brings their own personal tools, equipment, whatever, then, for example, like a consultant who goes and is in the consulting job has to be at different sites. It's required to have a particular computer and also a particular, say, BlackBerry or something. So when they're going site to site, they're always within the scope of their employment, he or she. And, you know, every traveling salesman case, I mean, it's kind of similar. It's a point told to go to different sites, set up for the sales, in those cases, the travel trips are within the scope of employment. So under your theory, and basically every consulting job, every consultant who's got their BlackBerry and their computer in the car or the vehicle going to the particular locations, they're always within the scope of employment. Well, are they required to carry the BlackBerry? Are they required by the... And are they required to go to this site one day and the other site the next day? I would think, yes. So just having the computer and the BlackBerry required to have that with them when they go to the particular sites to do their consulting job or strategic planning, they're always within the scope of their employment, then? Yeah, if they're required to, yes. Now, the big difference between that and, say, carrying your pen and going to work, and, oh, yeah, I've got my pen here, and I'll use that at work, that's... He could use the pen at work, at the job site. If he's got his computer at the job site and happens to take it home and bring it back and there's no particular purpose that the employer served, that would be different. I mean, the reason I gave the example of a consultant because a consultant needs their computer, most of them. They have to have a computer. Well, and you need to look at the employment relationship, too. Is that a consultant... We get a bit further afield here. Daniel Message was the employee of Imperial. Imperial has said, well, gee, you know, he's free to go on his own, go elsewhere. But the fact is that over the course of seven years, maybe for a couple of weeks, he worked for somebody else. It was a standard employment relationship. Imperial admit that he was an employee. A consultant, the relationship might be different. How about a law firm? Excuse me? How about a law firm? A law firm that assigns its employee to go to such and such a deposition and... Courthouse and whatever and they leave their home. Yeah, I think that's within the scope of employment that the employee has to show up with the tools of his trade. But, of course, here Imperial has talked about how the tools are personal tools and I find it's true in the sense that he owned them as an iron worker. But these were not personal. I mean, it's not like a toothbrush or I think even a computer. These are heavy-duty tools that needed to be brought to the work... that Imperial, in its contract, said, you know, we will provide the tools to do the job. It would have had to haul those tools itself if its employees didn't bring them on behalf of Imperial. Imperial was contractually obligated to provide those. We're talking about hand tools, the iron worker's hand tools, right? Not the... to the extent they use heavy equipment... Yeah, I think it's the welding equipment or the equipment to cut bolts and shape them and the like. Do you know any iron workers personally? I don't. Well, don't tell them that their tools aren't personal because you'll find out I think they're very personal to them. They're not... They're not senior nail clippers. Exactly. Yes. Don't touch my tools. Okay. I accept that. But it's still something that was very much within Imperial's purposes. And that's the Illinois Supreme Court said. It got the standard rule. Usually, an employee to and from a standard work site, that's within the scope of employment. Another example of this, I mean, of the principal you're espousing, are carpenters. Carpenters work out of the Union Hall. They get assigned different places. They show up at the job site. Most carpenters, just like the iron workers, have their own set of tools. They have to have their tools with them when they show up at the job. That's required. Right. So they're always, when they get the new job and they're required by the employer who's got the contract to do this construction site, this job, they're always within the scope of their employment, too, then. Well, I think you do need to look at the purpose the employer had. In this case, the employer had a very specific purpose because it was required to produce the labor and the supervision and the tools with which the labor would work at the job site. Very particular. So they could be distinguished from those cases because you've got a particular purpose. And you have a situation where you're talking about the trial court issuing summary judgment and finding as a matter of law that there's no issue of fact. You've got to take all the reasonable inferences in favor of the non-movement. And here, I think the reasonable inference is that, I think the evidence points this way, is that Daniel Message was required to take these tools to the job site, was part of the job, and that that was a purpose that Imperial had, and that Imperial also had a purpose to having him go to particular locales each time. And that if you take reasonable inference with those facts, then you have to take the next step, as Pines stated, could a reasonable person find that this was within the scope of employment? And we believe, yes, it was. And then I still have the possibility to read both sides. Yes. That's, I mean, it's really the, there was an issue of fact here, at the very least. And because there is an issue of fact, the trial court erred in ruling as a matter of law that this was not within the scope of Daniel Message's employment. Any further questions you want to delve into? I don't believe there are. Thank you. Thank you. All right. Thank you. Ms. Moriarty. All right. I knew that was going to come out. Good morning, Justices. Jennifer Moriarty on behalf of Imperial Construction Associates. In this case, Why isn't there a material question of fact, issue of fact? Well, the only issue that counsel has is whether he was in the scope of employment. That's the only, and there isn't one. The court was correct in granting summary judgment to Imperial. You have to look at all three of the criteria set forth in the restatement, second of agency, which the Illinois courts followed. And in Pine, or I'm sorry, in Noli, it said the court must find that all three are present in order for you to find that someone is in the scope of their employment. It must be the conduct that they're employed to do at the same time. Mr. Message is an iron worker. He's not a teamster. He doesn't drive for his job. He bolts and welds and erects steel. It has nothing to do with driving an automobile. And it also has to be within the authorized time and space. His start time is very clear, 7 o'clock. This accident happened at 5.30 in the morning. Well outside the time and space authorized for him to be at work. And, again, there has to be an actuated purpose. His conduct has to serve a purpose for his employer. He wasn't serving any purpose for his employer. The union agreement that Mr. Message entered into to be a union iron worker required him to have his own tools, to be ready to go when the union calls and says, Hey, Imperial needs an iron worker. There's been some confusion in council's representation. Mr. Message testified in this case that he had been on that job site for two weeks when this accident happened. He didn't change job sites daily. He went to a job site until his work was done or he was no longer needed and then sent somewhere else. That's the nature of the business. This is construction. When the erection of steel is done, you don't need the iron workers there anymore. They move on to the next project. Mr. Message also testified that he gets to choose whether or not he wants to take any job, how he gets to that job. His form of travel is at his own choice. If somebody had driven him to work that day with his tools in the car and gotten in an accident, would Imperial be liable for their actions because they were transporting its iron worker to a job site with his own personal tools? It seems beyond. In order to find Mr. Message in the scope of employment, you're opening the floodgates for litigation for people who work in certain types of industry, especially construction. As Your Honor had mentioned earlier, a construction worker who carries his own hammer to a job site would be on the hook for his employer in his travels to and from work. That simply cannot be the case. Otherwise, litigation in Illinois will explode in relation to this type of action. If there's an accident, there's probably going to be litigation. Just the number of parties might explode a little bit. But to have a corporation have to consider the liability of its employees in all of their travels because they're carrying tools in their car or a computer or a BlackBerry as a consultant to get to one location to another, that's asking an awful lot of an employer when they have no control over that type of action. And again, what happens in the situation where you get in a ride to work? In this case, Mr. Message's status is no different than that of the plaintiff in the Sloma case. The court found in the Sloma case that the plaintiff, who was a laborer riding with a co-employee, his job ended at the job site. It started and ended at the job site, regardless of the fact that he rode with an employee who routinely stopped to pick up supplies necessary to do the work the following day. Didn't matter. Sloma wasn't responsible for that. The court said his job ended at the job site and started there. Same for Message. His job starts when he gets to the job site at 7 a.m. and ends when he leaves. His transportation is not part or within the scope of his employment for him, period. So in Sloma, was it established that he was on an errand for his employer picking up supplies? The defendant driver was. Sloma was a co-employee laborer who was riding with him because they lived close. And in that particular case, the employer had a supply trailer close to the defendant's home so that he could pick up the supplies. And he was, in fact, responsible for that, driving his own vehicle. Mr. Sloma was just a laborer. He just got a ride because it was convenient. The employer also knew that. But Sloma wasn't responsible for the supplies, loading them or unloading them in the truck. Which is unlike the case in Lisinski, in which the plaintiff in that case was a laborer and his job required him to assist his employer in loading and unloading the supplies daily from the car that they traveled in. The court found that he was, in fact, still employed at the time the accident happened and therefore his claim fell under the worker's compact. But that's not the situation here. Mr. Metchidge had no responsibility until he got to the job site, until his job started at 7 a.m. That's when his responsibility and his scope of employment started for Imperial. Again, in this case, too, unlike traveling employees or salespersons, Mr. Metchidge wasn't reimbursed for his travel time, for travel expenses in any way, gas or anything. He wasn't paid for any of that because he wasn't working yet. He wasn't within the scope. As I said earlier, the nature of the business of ironwork, construction, takes these people to different locations periodically, not necessarily daily. Sometimes projects can last months, years or a day. It's just the nature of the business. And it doesn't put them in the same category as the salesman or the traveling employee. There just simply is no issue in this case that Mr. Metchidge was in the scope of employment when he had the automobile accident. The trial court was correct in granting summary judgment to Imperial. Any further questions? I don't believe there are.  Thank you. Thank you, counsel. Counsel, you may respond, reply, rather. I had actually intended to discuss some of the individual cases because I think they're very much in our direction, but your perceptive questions got me occupied. But I think the point, counsel argues that you have the specific time limit, 7 a.m. and 7 p.m. Cases don't go that way. In the Sloma case, the employee who was driving had the duty of bringing supplies to work. And he was on his way home, stopping at a nearby supply shed. He was going to stop, pick up the supplies for the next day's job. And the court said, yes, within the scope of employment. Here we have Daniel Metchidge. He had to bring his tools. Within the scope of his employment. And he was driving. It didn't matter in Sloma that you're talking about outside the work hours. It didn't matter in Sloma that it was his own personal car. It didn't matter. Those were factors that just dropped out. The cases of Jack's, similar. I mean, there was an issue back there. The fellow had the ladders on top of his van. And he said, gee, I thought we'd use the next day job in this place where I live, so I'm bringing them back from the job site. He was on for his brother. And the trial court took it away and said, no, not within court scope of employment. After the jury ruled the verdict, the appellate court said, no, this was an issue of fact. And it didn't matter that it was outside of work hours, that the guy was on his way home. Pine case, the employer admitted it was within the scope of employment, even though it wasn't reimbursing the employee for gas, even though it wasn't within work hours. He was taking some exam. The employer had actually funded the money for the exam but might get paid back. That was sort of up in the air. But the employer said, no, that we'll agree. He's in the scope of employment. The question was whether there was a frolic because he went drinking, which is a lot of times the question here. Imperials admitted in his brief that there was no frolic. This damn message may have stopped for a cup of coffee. That was it. He was on his way to work. Carrying the tools he was required to carry and going to his assigned place that day. Maybe I missed it. I didn't see anything in the record indicating that he was working for two weeks at the same job site. What I saw was him saying he was assigned daily to a different job site. But, you know, the time factors dropped out. The issue, if we look at this and cut to the chase, is that it seems in Illinois that the mere taking of yourself to perform labor is not for the employer's purpose. I mean, it's the fact that he's not just transporting himself to perform labor on the site. But that's where the tools come in to the picture is that he's doing more than just transporting himself for labor. Right. In Jack's case, the tools were the ladders on top of the cup. They weren't required. It was an issue of fact. The employer said to his brother, we didn't require that. I didn't have any idea, but the fellow who was carrying the ladders said, gee, I thought we'd use them the next day at the work. That was enough to bring it with him, give it a purpose for the employer. Let me ask you this. Excuse me. Those ladders, though, whose property were those ladders? I believe they were the ‑‑ as I recall, they were the brother's ladders. The employer's. Not the employer's. And the employer disclaimed any knowledge of the ladder or required any ‑‑ I'm sorry. Justice Smith, you may proceed. Thank you. The ‑‑ is there any limit in time and scope under your theory? I'll give you an example. Let's suppose ‑‑ I don't want to hit a sore subject, but let's suppose Chicago had got the Olympics. And they'd run out of iron workers. And so they called, they got a guy with a similar union contract, and they called Mary in Illinois. They said, you got any iron workers down there? She said, sure do. Said, we need them. Come on up. If you want to go to work, be it McCormick Place or wherever, Monday morning at 7 o'clock, with your tools, ready to go. Sunday at noon, this fellow is driving up, this iron worker is driving up 55 or 57, and gets in an accident in downstate Illinois on his way to Chicago. In the scope of employment? I believe it would be. You know, there are certainly distinguishing factors with our case. But, yes, I think it would be, because he would be serving the purpose of the city, the employer. If they call an iron worker in Florida, and he's on his way to McCormick Place Monday, and Saturday he gets in a crash in Georgia, is he in the scope of his employment? You get questions of detour and frolic, and what happens with the guy drinking, and how much is he just going directly up there. The employer's best estimate as to how much time it's going to take him to get there, so he leaves two days in advance. I think under the cases, Sloma, Jax, Pine, and others, they're cited. Yes. Although that's not the factual scenario, and we do have an issue with that here. And I thought the best case, the interesting case, was the one with the magnetic lettering on it, the pickup truck, the defendant's case, the Nolby career, was it? But the thing was, the employer told its employee, look, you've got to drive around with this lettering while you're working. But outside that, we want you to take the letters off. So he was driving around with the letters on. He had left them on, doing something completely divorced from work. Counsel has one minute. It wasn't deemed to be within the scope of employment. It was a correct decision. Excuse me. How would you instruct the jury on this issue of fact? What would you tell them that they're supposed to determine? Well, of course, I would tell the jury that he was within the scope of his employment. But you just say, well, the jury's to find whether he was within the scope of his employment. That's what you'd say. Yeah, if it's an issue of fact, it would be the jury's job to determine that fact. You wouldn't say any factors they'd look at or anything like that? There should be an explanation that if he's doing something for the purpose of the employer and that if the jury determines that the carrying of the tools was within the purpose of the employer and being assigned to that day's job site was for the employer's purpose, then, yes, it would be in the scope of employment. Thank you. Thank you very much. Thank you, counsel. Thank you. Thank you, counsel, both, for your fine arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue. The court will stand in brief recess for panel change. The court is now in recess.